MUTUAL FILM CORPORATION v. PASTIME THEATER. (No. 348.)

(Court of Civil Appeals of Texas. Beaumont. April 18, 1918. Rehearing Denied May 1, 1918.)

DAMAGES ⬅189—BREACH OF CONTRACT—EVIDENCE—SUFFICIENCY.

Evidence of damages suffered from breach of contract to furnish moving picture films *held* not to warrant recovery, being too speculative.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Action by the Pastime Theater against the Mutual Film Corporation. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Otto Taub, of Houston, for appellant. J. R. Burkett and Cooper & Merrill, all of Houston, for appellee.

BROOKE, J. This was a suit to recover damages for the alleged breach of a written contract executed between appellant and appellee, by the terms of which appellant agreed to furnish appellee for a period of at least six months, for exhibition in appellee's theater, certain films produced by appellant. The damages sought to be recovered consisted of prospective profits based upon diminution of the receipts of his theater which it was alleged might have been realized by him if the contract had been performed by appellant.

Appellant answered that it was justified in canceling said contract prior to its expiration, because appellee had, prior to such cancellation, violated the material provisions thereof, and also answered that, if said contract was breached by appellant, as alleged by appellee, it was not liable for appellee's diminished receipts, because such diminished receipts and his consequent loss of profits were not appellee's proper measure of damages, and that, if there were such diminution of receipts, it was not the result of appellant's breach of said contract to furnish the films.

Trial was had before the court without a jury, and resulted in a judgment for appellee for $500. From this judgment appeal has been perfected to this court.

In appellant's brief it is stated that he has concluded to rest this appeal solely on the question of whether or not the court could properly base a judgment for $500 on the testimony offered by appellee as to the damages sustained by him for the alleged breach of the contract sued upon.

The suit was filed December 19, 1916. The alleged contract was entered into between appellant and appellee on May 23, 1916. On June 5th appellant notified appellee by letter that it had canceled said contract, and would discontinue its service to appellee after June 11, 1916. Appellant accordingly discontinued its service to appellee on June 12, 1916. The allegation was that the receipts of appellee's theater diminished on an average of $15 daily, and suit was entered to recover such damages.

The court before whom the case was tried, among other things, found, in his first finding of fact, that on May 23, 1916, plaintiff was engaged in exhibiting moving pictures at his place known as the Pastime Theater located on Main street in the city of Houston, and had been so engaged for a period of two years or more, during which period of time he had used and exhibited at such theater the Mutual Program, produced and furnished by defendant, and thereby had built up an extensive patronage among the show-going public of Houston.

With reference to this finding, the testimony shows absolutely nothing upon which to base the same, and the testimony of appellee himself contradicts this finding of the court; for it is shown beyond controversy that the appellee had not for the two years prior to May 23, 1916, used the Mutual Program produced and furnished by defendant, and had not thereby built up an extensive patronage among the show-going public of Houston. The court was correct in its finding that the appellant breached the contract.

The court further found that appellant was liable and bound to pay to plaintiff the amount of damages sustained by him by reason of defendant's breach of its contract, to wit, the sum of $500, and further found that on May 23, 1916, and June 11, 1916, and between said dates and for a long time prior thereto and up to and including the date of the trial hereof, the plaintiff was exhibiting films in the Pastime Theater furnished him by the General Film Corporation, such films being of the same general character as the ones furnished and agreed to be furnished under the contract between plaintiff and defendant, and this apparent contradictory finding is, upon examination, found to be supported by the record. The court further found that the failure of defendant to furnish films under said contract did not cause any interruptions of the moving picture business conducted by plaintiff; that said business was never closed on account of the failure to furnish films by this defendant, but was kept open and in operation during all the time between said May 23, 1916, and the trial of this cause, plaintiff exhibiting during said time films furnished by the General Film Company and films secured from others. He further found that during the period between May 23, 1916, and the trial of this cause there were films of the same

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

general character as those furnished by defendant released by other film companies in the cities of Dallas and St. Louis. There was a further finding that the moving picture business generally, of the character run by plaintiff, was not as profitable a business during the year 1916 as it was during the preceding year, and that during the summer months, that is, during the months of June, July, August, and September the receipts of picture shows in the city of Houston fell off to a considerable extent.

With the above findings, it may be said that another picture show was opened on Main street just opposite the place occupied by appellee, to wit, the Best Theater, about the time appellant notified appellee that it was not furnishing further service. It was also shown that during the summer months in Houston the receipts of motion picture theaters are materially diminished by reason of warm weather, which said decrease was estimated by witnesses to be from 20 to 40 per cent. In addition to the above, the opening of the Prince Theater, another competitor of appellee in the motion picture business, in September, 1916, seems to have caused a material diminution of the receipts of all motion picture theaters in Houston. It was also shown by the evidence that the receipts of motion picture theaters such as was conducted by appellee are uncertain, and are dependent to a material extent upon the weather, counter attractions, parks, and any other conditions that may affect said business one way or another. There was no difficulty in obtaining films for the kind of theater appellee was conducting, of the same character as those which the Mutual Film Corporation was under contract to furnish appellant.

The first assignment bases error upon the court entering judgment for plaintiff for the sum of $500 for the reason that there is no testimony in the record upon which a judgment in favor of plaintiff for said sum could be based.

It is not the purpose of the writer to set out in full the testimony of the various witnesses who testified in this case. A book containing the record of the receipts and expenditures of the appellee at his theater during the year 1915 was offered in evidence, and was admitted, and it may be said that, while the year 1915 was more profitable in the picture show business in Houston than the following year, yet the appellee was not producing films of the Mutual Film Corporation during 1915. However, the court permitted this book of alleged expenditures and showing expenses and profits to be admitted as evidence in the case, although the Best Theater was not in operation on the same street and just opposite the appellee, nor was the Prince Theater in operation at the time, and it was found by the court that the year 1915 was more profitable in the picture business in Houston than the year during which the contract was in force.

While the conditions were not the same, that is, the general conditions affecting the moving picture business in Houston, the appellant strenuously objected to the admission of the testimony, contending that it had been made to appear affirmatively that the amount of business done and profits realized during such prior period to the breach of the contract complained of accrued under circumstances and conditions materially different from the circumstances and conditions prevailing during the period for which damages are sought to be recovered, and that testimony of the amount of business done and profits realized during such prior period should not be taken in consideration in estimating and assessing the damages sustained by the injured party. This testimony offered by appellee as to the damages sustained by him, and consisting of the weekly receipts and expenditures of his theater for the period commencing May 3, 1915, and ending November 21, 1915, and omitting the period between November 1 and November 21, 1915, and for the week of December 11–17, 1916, seems to be the only evidence offered that was not entirely conjectural and speculative in the minds of the witnesses who testified.

Bearing in mind that the undisputed testimony shows that during the period beginning May 3, 1915, and ending November 15, 1915, appellee did not exhibit films furnished by appellant at his theater but exhibited films furnished him by the General Film Company and other film concerns, and from about November 15, 1915, until June 11, 1916, appellee exhibited at his theater films furnished by appellant and by the General Film Corporation and others, and beginning June 12, 1916, and until the date the contract sued upon could have been canceled by either party, appellee exhibited at his theater films furnished by the General Film Corporation, the Unicorn Film Corporation, and the United Film Corporation, and other film concerns, we are at a loss to know upon what the court based his finding that the appellee was damaged in the sum of $15 per day on account of the cancellation of the contract by appellant company.

In the case of Walter Box Co. v. Blackburn, 157 S. W. 220, the court, speaking through Judge Rice, used this language:

"We think this demurrer was properly sustained, for the reason that such profits were uncertain and speculative, and the facts pleaded did not warrant their recovery. It appears from the allegations of the petition that appellant had no established business at the time. There was nothing upon which to base an estimate of the profits that it would have made, nor is it certain that it would have made any profits. It is said in Fraser v. Echo Mining Co. [9 Tex. Civ. App. 210] 28 S. W. 714, that 'damages in the nature of lost profits cannot be recovered for delay in furnishing material for a smelter where it is not shown with certainty that the smelter could have been operated at a profit.' Where the loss of profits can be shown with reasonable certainty, the rule seems to be that they are recoverable; but in the present case it does not appear that, if plaintiff had conducted the busi-

ness during said period of time, it would have made any profits whatever. The uncertainty does not depend upon the difficulty of the proof as to the exact amount of damages in such cases, but upon the determination of the fact as to whether or not there would have been any profits at all.) In the present case it is entirely problematical as to whether appellant could have operated such business at a profit or loss for the period it was deprived of the building. It had no going or established business upon which to predicate such a claim for profits, as was the basis of recovery in American Construction Co. v. Caswell et al., 141 S. W. 1013. It is true that it alleges that two years before it had conducted a similar business as the one proposed in the same town, and that it alleges that it had talked with and obtained assurances from former customers that they would again favor it with their patronage, but it is not alleged nor shown whether such former business was conducted at a loss or profit, nor does it appear from the petition that similar conditions existed as when such former business was conducted. It is true it is alleged that for three months after it obtained possession of the building it made a profit, stating the amount, but that was at a different season of the year, during the fall, and, as a matter of common knowledge, business is better then than at any other season."

In the present case it may be well said that from the testimony of the witnesses there was very much uncertainty as to whether the appellee, during the time of the existence of the contract, would have operated his theater at a profit or at a loss, on account of the changed conditions, and, among others, the competition among rivals in the same line one of whom was on the same street, just opposite his theater, and the Prince theater, it seems, not only injuriously affected one, but the testimony shows that it injuriously affected all the persons in the same business in the city of Houston. Therefore we are unwilling to allow this judgment to stand, based upon the conclusions filed by the trial court, at least one of which is shown to be absolutely contrary to the evidence, and with reference to the business having been established and run for two years, using the Mutual Film Company's program, and having thereby built up its business.

In the situation of this record, we hold that the evidence does not justify the verdict.

Therefore the judgment is reversed, and the cause remanded to the lower court for a new trial.